Our third case for the morning is Smith v. Rosebud Farm, and we have Mr. Dallas for the appellant. Good morning, my name is Stephen Dallas and I represent Defendant Rosebud Farm Stand. May it please the court. This appeal arises from a workplace harassment lawsuit. The plaintiff filed claims against the defendant for sexual harassment and retaliation under Section 1981. Rosebud Farm Stand is appealing the trial court's denial of defendant's motion for judgment as a matter of law on plaintiff's claims for sexual harassment and retaliation under Section 1981, and the trial court's denial of defendant's motion for a new trial based on statements made by plaintiff's counsel in closing arguments. With respect to plaintiff's sexual harassment claim, defendants assert that there was no evidence to demonstrate that the harassment issue was based on sex. With respect to plaintiff's 1981 retaliation claim, defendants assert that plaintiff's co-workers did not know that plaintiff had filed charges alleging racial discrimination. Counsel, did you ever ask the supervisor on the stand whether he had reported those allegations to the others behind the counter? I did not try to participate in the trial in this case. Do you know whether that question was asked? Is that in the... I do not believe it was with respect to the retaliation claims. Well, because it seems to me that there's plenty of evidence in the record from which a reasonable juror could conclude that even though he didn't, I mean, in your brief you characterized it as, well, he would have had no reason to tell them because he wasn't trying to get them to shape up on the racial slurs, he was trying to get them to shape up on the sexual harassment. There's plenty of evidence from which a reasonable juror could conclude that he told them because he was either generally griping about the plaintiff or because out of spite he wanted them to retaliate against the plaintiff. I guess I would make two points. First, the charges, the racial discrimination charges are different from the racial harassment the plaintiff alleges in his claim. In his... The sexual harassment? And the racial harassment. In the underlying lawsuit, the plaintiff alleged that he was called a number of racial slurs, things of that nature, but that wasn't the charge he filed with the EEOC. Instead he alleged that his hours were reduced and that he was fired based on his race. Again, but why couldn't a reasonable juror conclude that the supervisor told the other guys behind the meat counter about that? Especially if he was never asked directly, did you or did you not? He did indicate that he discussed the sexual harassment charges with them. I know. They were named individually. But what about the racial, I mean, you think a reasonable juror couldn't have concluded that he did that? Just he didn't like, he didn't like the plaintiff either. I mean, he had told them, you know, you're not welcome here. He didn't like them. So couldn't a reasonable juror conclude that he was just complaining about him and the EEOC charge or that he told them so that they would retaliate? I don't think there's any evidence that indicated that that took place. Did you raise this issue with the district court judge? Again, our firm did not handle the trial of this lawsuit. Would you agree if you did not raise this issue with the district court judge that you've waived it for purposes of appeal? I know with the district court judge, the issue was raised as to whether there were sufficient facts to establish retaliation. But that's a separate question. Then you're arguing here that there was no evidence of the racial retaliation claim and that he had told other workers about the filing of the complaint for racial retaliation. Did you raise that with the district court? And if you didn't, haven't you waived it? I don't believe that that specific ground for retaliation was raised with the district court. Have you waived it then for purposes of appeal? I think our position is that it falls under the umbrella of the issues that were raised with respect to whether there was retaliation. Because you raised with the district judge the question of whether there was sufficient evidence of retaliation on the EEOC complaint? That issue was raised? So is this a question of the issue was raised, but you didn't flesh out the argument below in the way you're fleshing it out here? I think that's our position, that it wasn't as detailed as what we're presenting here, but the issue was raised as to whether there was sufficient evidence on plaintiff's Section 1981 retaliation claim for the verdict. Let me shift and ask you about whether the sexual harassment was because of sex. The cases in which we have said that perhaps this was harassing or horseplay, but not actually sexual harassment for purposes of Title VII, have involved pretty isolated incidents. Nothing that was this pervasive and to this degree. I think that's accurate. So why couldn't a reasonable juror then conclude that this was because of sex? It didn't happen to any women. It only happened to him, and this wasn't just a few incidents. This was pretty severe and pervasive. I guess I'll address the point about it happening to women separately, but first it has to be based on sex. Ankhil made that very clear, and while the frequency of harassment differs from Lord v. High Voltage Software and Schaeffer v. Calcon, the conduct here is almost identical. The mere fact that the conduct was repeated doesn't change the intent of the conduct in the first instance, demonstrating that it's something other than horseplay. Just because there was a lot of horseplay doesn't change it from horseplay to sexual harassment. Isn't that a question for the jury though, if it's horseplay versus sexual harassment, given the pervasiveness of the conduct here? I think there has to be some evidence from which they can make that conclusion. And is it your position that they can't make that conclusion solely based on pervasive extreme, if you take the plaintiff's testimony, in the light most favorable to him, which we must? Is it your viewpoint that that could never amount to harassment based on sex because it's same-sex? Yeah, I believe in Schaeffer, the conduct at issue, while less frequent, was more severe, and the court held that as a matter of law, it couldn't. But in Schaeffer, there were only three or four instances over a period of time, as opposed to what plaintiff testified to here, that it was almost daily. Our position is that the frequency of the conduct doesn't change its nature. There has to be something to link it to plaintiff's sex. As a matter of law, frequency can't change the nature of the behavior? I mean, something that started out, it seems to me that a reasonable jury could conclude otherwise because something that started out as a few isolated incidents, if it becomes intense and pervasive, it seems to me that can shift the motivation. Or at least as a matter of law, it wouldn't necessarily. I guess, going to Judge St. Eve's point, that would be a matter for a jury to conclude. I wouldn't say as a matter of law, something that might not be because of sex, as a matter of law, if we looked at two or three incidents, as a matter of law, at 500, wouldn't be because of sex. I'm not aware of any authority that says sheer frequency because there was no evidence in the record that the nature of the conduct changed. It was always the same touching throughout the course of the employment. So there's nothing in the nature of the conduct that changed. It was just ongoing. I guess our argument is that the fact that it was ongoing can't change the nature, can't demonstrate it was based on sex. You have a lovely, low, well-vigilated voice, and I'm an old man, so you keep it up. Okay. I will do my best. As I was saying, nothing in the nature of the conduct changed. It was just ongoing. I don't think there's any evidence in the record that the frequency changed. It was just ongoing during the course of the employment, and there's nothing in there to differentiate those incidents as horseplay from sexual harassment. And I think Lorde supports that. I think the court said there, with respect to same-sex harassment, this court has held that sexual horseplay differs from sex discrimination, and absent evidence of sex discrimination, sexual horseplay is not sufficient to support a Title VII claim. I don't think there's any authority that supports the proposition that sheer repetition can change sexual horseplay. Well, it might be a question of first impression, but I guess what Judge St. Eve and I are pressing you about is whether one can truly say, as a matter of law, that the sheer amount and pervasiveness of this sexually tinged conduct, touching of genitalia, mimicking of sex, that the sheer amount of that, as a matter of law, a jury couldn't conclude that was because of his sex. I don't think there's a basis to conclude that if that conduct was initially sexual horseplay, the mere fact that it was ongoing over the course of his employment changed it to something different, something based on his sex, if that original intent wasn't there. And what about the fact when you throw in that the women testified who came and helped down at the counter, that this conduct never occurred with respect to them? Well... Doesn't that change it? The plaintiff worked behind the meat counter. It was crowded. He worked in close proximity to his fellow employees. All the employees behind the meat counter were male. But there was testimony that women would come and help out at the meat counter under those same circumstances, and it never happened to them. I don't think there was testimony that they would come behind the counter and participate, merely that they would walk back to the counter to return items. And there were also... Well, they would come and help out in the meat counter when they were shorthanded. I think that's what the testimony was. Whether or not they were behind the counter or next to the counter, they were still back working in that same department. I think there was also testimony that there were other male employees that were employed in the front of the store, and none of those male employees... Doesn't matter, though, because the women, I mean, on Collie, one of the things it says can be used to show that same-sex harassment is because of sex, is if it was targeted just based on the one gender. And the fact remains, remember, we're talking about what a reasonable juror could conclude, that if it happened to the men and did not happen to the women, that that would permit a reasonable juror to conclude that it was based on sex. Our argument is that there were both men and women working in the front of the store in different roles. I understand that, but that's an argument to make for the jury, right? You're asking us to overturn a jury verdict and say that no reasonable juror could find. So as a matter of law, a reasonable juror could not conclude that this was because of sex. There has to be a showing that similarly situated female employees were treated differently, and the argument is that the female employees were not similarly situated. Even though they came back, as Judge Senev said, to help out at the meat counter. There were other male employees employed in the same positions and generally performed the same actions, and those male employees, there was no testimony that they encountered any sexual harassment. So the deciding factor was whether or not they were behind the meat counter, not whether or not they were male or female. Isn't the deciding factor what job they were performing? As opposed to whether or not they were behind the meat counter or not? Well, there were no female employees behind the meat counter. But isn't the deciding factor what job or what department they were working in? To be similarly situated? I would agree with that. I guess, and then additionally, with respect to opposing counsel's closing arguments. Opposing counsel's statements during closing arguments referencing terrorist attacks and comparing defendants to terrorists warranted a new trial in the trial court. Do you want to reserve your three minutes for rebuttal? I'll wait a little longer. Just briefly, there's three things that distinguish this. Generally, it's very rare to overturn or to order a new trial based on statements in closing arguments. But here, not only were the statements extremely inflammatory as acknowledged by the trial court, but the trial court didn't sustain the objection to those statements. But you didn't object on the grounds that they were inflammatory, did you? The objection was that they were beyond the scope. And that they were based on scientific evidence that wasn't in the record. There were two sets of comments. The second one referenced scientific evidence. So you didn't object on the grounds that they were inflammatory or prejudicial? Those specific words were not used? Well, Judge Dow also pointed out that during this terrorist spiel, the jurors were rolling their eyes. I mean, it didn't seem like it really harmed your client. If anything, it seemed like it wasn't a very effective strategy. They did enter a judgment that was remitted. And one of the factors for remittance is prejudice. I would also add that the defendant with the most direct conduct had the least amount of damages awarded to him by a factor of approximately 10 against him, by a factor of approximately 10. Even if the comments were prejudicial, wouldn't Judge Dow's instructions at the end have cured that? The closing arguments are just arguments. It's not evidence. Wouldn't that cure any prejudice? That argument would be much stronger if he hadn't sustained the objection, or if he had sustained the objections when the comments were made, but he indicated that he didn't see anything wrong with that. And I think that kind of distinguishes this from a lot of cases that are similar. I guess I'd like to reserve my remaining time for rebuttal. Thank you. Thank you, counsel. Mr. Longo? Good morning, Your Honors, and congratulations, Judge. Thank you. I think what Your Honors have mentioned a couple times already is how are you going to review this case. And as you've already pointed out, we review it by looking at what the jury did and how much deference we do give to the jury. This was a smart jury, two Ph.D.'s, a clinical psychologist trained to determine if somebody's lying. If you lost the case downstairs, would you still say the jury was a very rightful? I would say that. I've never had a jury that had two Ph.D.'s. I mean, a college president that's used to defending. She said she used to defend discrimination claims. So this was a pretty smart jury. I was very happy to have that. Because you won. But let's look at the evidence, though, putting the jury aside. It was egregious. Judge Dow said it was vast evidence against Rosebud. And that's what this court looks at. Is it really a good faith argument to say that no reasonable jury, based upon this vast, egregious evidence, could ever find against Rosebud? And that's why we mentioned in the brief that some of the arguments they made might even be frivolous. They have a very heavy burden. Counsel, could you address the retaliation point in 1981? Sure. Sure. Address the question of, you know, address the question, the argument that Rosebud makes that this was not retaliation based on race because those behind the meat counter didn't know about the EOC race-based complaint. There's no evidence to that. They point to absolutely no evidence what they knew or did not know. And so now it goes down to what could the jury infer based upon credibility, based upon demeanor, based upon everything? They cannot say there's no evidence. What evidence? Did they ask? They didn't ask any of these employees, did you know? Did you know? They never asked that question. Why not? The jury could infer that there's a reason for that. And as we point out, the Papalino case, we don't have to prove, it's nowhere in the case that the plaintiff has to prove that each one of these abusers, these retaliators, knew that the plaintiff had complained about race discrimination and now we're going to go get them. The jury could infer that they did know or the jury could infer that the general manager said, you know what, I want you to get these guys. He is not welcome. And you know what that means. And the jury couldn't infer that because the evidence, the vast evidence as Judge Dow said was that things changed. They were no longer the same, but different. We're using knives, slashing the plaintiff's tires in a gated employee parking lot, cracking his window, breaking his practically brand new TV during the time that he was on break. It went on and on. Wouldn't he be afraid? And wouldn't all of this fear caused by Rosebud be geared to a reason and that reason being retaliation? And the jury could infer that. So for Rosebud to say there's no evidence, what they really want you to do is say, you don't need this jury. They're second class citizens. We will make our own credibility decisions. And this court has repeatedly held that you just don't do that. Have I addressed the question? Yes, you have. Thank you, counsel. All right. Thank you. As far as because of sex, and by the way, because of sex, Rosebud mentions the decision, this court's decision in Lord. But as Your Honor had pointed out, Your Honor, four times, I mean, we don't have what happened here, grabbing his penis and his testicles day in and day out, I mean, getting behind him, he's at work, he's there to earn a living. He's not there to say, listen, my genitalia is up for your whatever you want to do to it. I mean, getting behind him and thrusting as if having anal sex and getting in front of him as if he's having, you know, to have oral sex. This is a workplace. So how can they get up there and say this is not because of sex? Now this didn't happen in Lord. What happened in Lord is the guy put his hands between the plaintiff's legs. There's no evidence that they grabbed his genitalia, but there's vast evidence, as Judge Dow said, that this happened nearly, as Your Honor pointed out, nearly every day to Mr. Smith. So how could they get up and say there's no evidence that a jury could infer that this was because of sex? And I might add, the defendant keeps mentioning that, you know, this just happened, and I quite honestly don't understand the argument that this just happened in the meat department, it was a tight quarters or whatever. Well, it wasn't tight before this retaliation, but it just didn't happen in the meat department. This grabbing of his penis and his testicles happened in the produce department, in the storage room, in the stock room. I mean, even in the walk-in freezer, the assistant general manager goes up and invites him to a hotel and says, you know, I'm into you, you know, essentially he's saying I want to have sex with you. Why don't you like me? This is a workplace, and for them to argue that this is not because of sex, I don't understand that. Or at least to argue that the jury, no reasonable jury, could find that that's because of sex. So this didn't, this type of conduct didn't happen indoors, so there's nothing to distinguish there. Furthermore, as your Honor's pointed out, the women did not have this treatment. They weren't targeted. And notice what these, what Rosebud targeted. His genitalia. They didn't, he didn't, they didn't target his leg, his arm, which is common to women. They targeted something that's unique to men. Because of sex, because of gender. And furthermore, I mean, we only have to prove one prong of, you know, because of sex, but I believe the jury could infer we proved all three. You know, number one, they targeted his genitalia. Number two, women did not have to endure this abuse. And number three, some of the employees admitted that these others were homosexuals. Whether they are or not is not the issue. What is the issue is, is this because of sex? What's going on? Is this abuse? Could the jury infer that it is? And I don't believe Rosebud has met the very high burden to prove otherwise. And as a side issue, if this court were to find that, no, no reasonable jury could find that grabbing this guy's penis almost every day, squeezing his testicles to the point that he's kneeling in pain with tears in his eyes, no, that's not. As a matter of law, that's not because of sex. Then I'd have to ask them what is. They've never pointed that out. They've never told us what is because of sex. I'm curious. What is it if it's not that? But let's just say this court were to overrule the jury, essentially, and overrule the district court judge. Then we would have inconsistent rulings, essentially. On the one hand, the general manager and the assistant general manager have admitted that their abuse was because of sex. How is that? Well, there's a final judgment against them. It's final. Rosebud argues, so, law of the case. Rosebud argues, so if your honors were to overrule this, then we have on one hand a ruling that says that this abuse is because of sex, and on the other hand, we're saying that it's not. Rosebud says, well, you know what, even though they admitted it, we still have a right to appeal. But Rosebud can only act through its employees, its management. The case law is clear that Rosebud was strictly liable for this general manager's conduct, this assistant general manager's conduct, and they've admitted that we grabbed his penis and his testicles because of his sex. We know that they admitted it because the judgment is final. They didn't appeal it, or they dropped the appeal. And as far as the closing argument, this court has pointed out in Depp v. Tripp that it's beyond this court's review to review something if they don't object, and they didn't. As your honor pointed out, the scope objection, the scientific evidence, that's not the specific objections they're raising today. And even if there were some type of prejudice, the evidence is, as Judge Dow said, vast. It's egregious. How could any jury not find otherwise? Despite the closing argument, as your honor had pointed out, the jury instructions were clear that closing arguments are not evidence. As far as the racial, or as far as the retaliation, by the way, your honor had raised it, did I, I know I asked you if I answered your question, was there another question? No. Okay. Judge Dow found, and can it be said, that no reasonable jury could not find retaliation here? We have him, we have Rosebud calling him a nigger, or a slave, five times a week, which in the six months that he was there, before he just couldn't take it anymore, that's 120 times. Why should somebody have to put up with that? That's retaliation. He didn't have to put up with that type of retaliation prior to. But even if they had called him a nigger more times prior, as I pointed out, walking around him with knives sticking out, and he had to move away to avoid getting cut, his life, he felt threatened. That's retaliation. And I might add, I know that your honor had asked me about the fact that, you know, does every employee have to know that Mr. Smith filed a race discrimination charge? But I might add that that's a new argument. That was never raised below. And your honors have pointed out many times that you can't raise new arguments that the district court did not fairly have a chance to address. I mean . . . Did you try the case? Yes, I did. Is that a good thing or a bad thing? You can get trial lawyers to show us. Oh, thank you. I think. You may agree. Thank you. Thank you. I'm wondering if there's any other questions. I don't want to . . . No. Feel free to yield your time. All right. I think you've answered all of it. Thank you, counsel. No, thank you. Ms. King. May it please the Court, Anne King for AMECA's U.S. Equal Employment Opportunity Commission. As your honors know, our brief focused on the because of sex issue, and I just wanted to respond to two points raised previously, the question of how frequency of conduct could change the nature of the behavior in the because of sex analysis, particularly in a same-sex harassment situation, and second, whether the female employees at Rosebud had to be similarly situated or have the same job. As to the first point, your honors are correct that frequency can alter the way that the jury might have perceived whether the conduct here occurred because of sex, and again, as Mr. Longo emphasized, this was persistent grabbing of Mr. Smith's testicles and penis, simulated anal sex that occurred over the course of 2003 to 2007, so quite frequent and quite persistent harassment. That's a basis, of course, for distinguishing Schaefer and Lord, which had a much narrower scope of conduct, and as for authority on the link between persistence and the because of sex issue, Schaefer actually points to that in distinguishing other decisions of this Court from the facts in that case, and in discussing in particular whether the conduct is horseplay, Schaefer suggests that persistence could be an important factor in assessing horseplay versus same-sex harassment that's actionable. Another opinion that might be useful is the Second Circuit's decision in red, which is cited in the EEOC's brief. That decision involved three incidents of same-sex harassment, a supervisor touching an employee's breast. The Court thought that it was notable that there were multiple incidents because it could be inferred that, for example, the conduct wasn't incidental or just by chance and that it may actually be predicated on sex versus other motivations. As for the second point I mentioned, whether the female employees must be similarly situated, Rosebud appears to argue in its reply brief that a strict comparator standard would apply, but I think it's relying on the prima facie case from a discrimination claim. So it cites the Coleman v. Donohue opinion, which concerns the nature of comparator evidence that's required at the prima facie stage. Now Coleman actually makes clear that the comparator requirement shouldn't be applied too strictly and that maybe a bit more strictly in the case of, for example, performance evaluations where it is important to have a supervisor who's the same for the two employees. But there's nothing in the case law that I'm aware of that says that the female employees under that path and on-call must be comparators in the sense that this Court has identified in the prima facie case context. Just to note, on-call points out that comparing female employees who were not targets of harassment might be a way to establish that conduct is based on sex. Nothing in that opinion suggests that they must be exact comparators. And indeed you can imagine a situation where, for example, say in a plant where different employees have different jobs and some male employees perhaps are subject to harassment but not females. It really shouldn't matter if they're within the same space, their exact job descriptions. Here it's important that, as the company president testified, this is quite a small store. It's about 3,000 square feet. And there is evidence that the female employees, although they didn't work in the meat department, as Judge St. Eve pointed out, came back to the meat department on a regular basis. So I don't think that it really matters on this record that the female employees had a different job description. Thank you, Your Honors. Thank you, Counsel. Mr. Dallas-Rebuttal. I just have a few brief points. Mr. Longo indicated that things changed after the plaintiff filed his retaliation charge with the IDHR. The sexual harassment changed. It stopped at that point. We also acknowledge that intimidation started. But with respect to the racial discrimination that was alleged in the complaint, that largely went unchanged. The plaintiff testified that it was the same or maybe slightly less after he filed his retaliation. Doesn't have to be racial? Yes. That's my argument. The fact that the sexual harassment stopped after the employees were discussed or talked about it with. So you can't retaliate by beating knives or that sort of thing for the racial complaint that was filed? You can. My argument is just a factual. There's no connection between the two, whereas there is a clear logical connection between the sexual harassment and the retaliation. I would also like to point out, while Lohr didn't involve simulated sex, Schaefer did. Simulated fellatio. There, the defendant also grabbed the plaintiff's hand and placed it on his crotch and simulated sex. Thank you. Thank you, counsel.